**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**JERRY WAYNE ROLAND**                                                **PLAINTIFF**

**VS.**                           **CIVIL ACTION NO.: 4:12-cv-00099-GHD-DAS**

**HUMPHREYS COUNTY, MISSISSIPPI, et al.**               **DEFENDANTS**

**COUNTY DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF PARTIAL MOTION FOR SUMMARY JUDGMENT**

**COME NOW**, Defendants, Humphreys County, Mississippi, Sheriff J.D. Roseman and Deputy Sam Dobbins (referred to as "County Defendants"), by and through their counsel of record, and respectfully file this their *Memorandum in Support of Partial Motion for Summary Judgment*, as follows:

## I.     INTRODUCTION

Plaintiff Jerry Wayne Roland ("Plaintiff") has alleged an array of state and federal law claims against the County Defendants including: (i) unlawful arrest in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments; (ii) unlawful detention in violation of § 1983 and the Fifth[1] and Fourteenth Amendments; (iii) malicious prosecution; (iv) malicious abuse of process; (v) loss of personal property; (vi) intentional infliction of emotional distress; (vii) intentional infliction of physical harm; (viii) negligence; and (ix) reckless disregard for Plaintiff's safety and well-being while incarcerated.[2]

These claims stem from Plaintiff's arrest by Deputy Dobbins on March 27, 2012 for commercial and residential burglary, which led to his incarceration in the Humphreys County jail

---

[1] Plaintiff's Complaint alleges claims under the Fifth Amendment. However, the Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor, neither of which occurred here. *See* [Doc. 1, ¶ 19].

[2] *See* [Doc. 1]. While the County Defendants do not concede that each of these claims are necessarily actionable and independent causes of action in and of themselves, each will be addressed in turn.

until April 4, 2012. Plaintiff further complains of his subsequent arrest on these same charges by Deputy Dobbins on April 24, 2012, which led to a second period of incarceration at the Humphreys County jail until June 29, 2012. During his second incarceration, Plaintiff complains of numerous unlawful conditions of his confinement and specific acts by Deputy Dobbins.

Because no genuine issues of material fact exist with respect to all but one of Plaintiff's claims, and the County Defendants are entitled to judgment as a matter of law on the same, partial summary judgment should be granted to the County Defendants on the claims addressed herein.[3]

## II.  FACTUAL BACKGROUND

On Monday, March 26, 2012, the Humphreys County Sheriff's Department received a telephone call from an individual named Robby Forbes alleging that someone had broken into his farm shop and house trailer located at 3237 Cole Lake Road and had stolen several items.[4] Forbes had left town during the early morning hours of March 24, 2012 and did not discover the burglary until he returned to his farm property on March 26th.[5] When he did so, he discovered that a 420 Gold Seal Miller welder, a DeWalt grinder, a cordless screw gun, eleven cases of Delo 400 motor oil, a radiator, and gas from an air compressor had been stolen.[6] According to Forbes, it appeared as though someone also had siphoned gas out of his air compressor by using a hose they had brought to the premises with them and left behind.[7] The piece of hose left behind by the burglar was not Forbes'.[8]

---

[3] It is conceded that fact issues exist with respect to Plaintiff's claim that he was unlawfully denied a probable cause hearing by Deputy Dobbins within 48 hours of his first arrest on March 27, 2012 and Deputy Dobbins does not move for summary judgment on this claim. This is the only claim on which Deputy Dobbins does not move for summary judgment. The remaining County Defendants move for summary judgment on this claim.

[4] See Deposition Excerpts of Robby Forbes, Pgs. 4:15-22, 7:7-14, 13:5-22, attached as Exhibit "A" to Motion.

[5] See id. at Pgs. 18:15 through 19:18.

[6] See id. at Pgs. 19:19 through 21:3.

[7] See id. at Pgs. 20:25 through 21:6.

Though he did not know for sure, Forbes believed that Plaintiff, his cousin and former employee, had stolen these items based on previous thefts he had experienced whenever Plaintiff happened to be seen around his property.[9]  Shortly after discovering the burglary, Forbes reported the burglary to the Humphreys County Sheriff's Department.[10]

Deputy Sam Dobbins responded to Forbes' call and conducted an investigation on March 26, 2012 into the reported burglary.[11]  During his investigation, Deputy Dobbins learned that an eye witness, Robert Earl Wade, had seen Plaintiff on Forbes' property shortly before the incident took place.[12]  Based on his discussion with Wade, Deputy Dobbins began looking for Plaintiff for questioning in relation to the burglary.[13]  After networking with surrounding law enforcement agencies, Deputy Dobbins learned that Plaintiff had been picked up by the Sunflower County Sheriff's Department on March 27, 2012.[14]  Specifically, Deputy Woody Spencer of the Sunflower County Sheriff's Department had located Plaintiff at the Travel Inn motel in Indianola, Mississippi that day and had taken him into custody for questioning in relation to the burglary.[15]

When he was taken into custody by Deputy Spencer, Plaintiff allegedly had numerous items of personal property in his motel room and his 1994 GMC pick-up truck was parked at the motel. With the exception of the pick-up truck, much of Plaintiff's personal property was allegedly disposed of by motel management when he was taken into custody by Deputy

---

[8]  *See id.*

[9]  *See id.* at Pgs. 9:5 through 10:1 and Pg. 21:4-6.

[10]  *See id.* at Pgs. 7:7-15.

[11]  *See* Deposition Excerpts of Sam Dobbins, Pg. 9:2-20, attached as Exhibit "B" to Motion.

[12]  *See id.* at Pgs. 9:2 through 10:11.

[13]  *See id.* at Pgs. 10:15 through 11:22.

[14]  *See id.*

[15]  *See* Deposition Excerpts of Jerry Wayne Roland, Pg. 116:5 through 117:25, attached as Exhibit "C" to Motion.

Spencer.[16]  However, neither Deputy Dobbins, Sheriff Roseman, nor anybody else from the Humphreys County Sheriff's Department was present when Plaintiff was taken into custody by Deputy Spencer on March 27, 2012.[17]

It was not until Plaintiff subsequently was transported to the Sunflower County/Humphreys County line that he was transferred by Deputy Woody Spencer into the custody of Deputy Dobbins (and the Humphreys County Sheriff's Department) for the first time.[18]  At the time of transfer, Deputy Spencer informed Deputy Dobbins that he had seen a 4-6 foot piece of hose in the back of Plaintiff's pick-up truck when he took him into custody earlier that day at the Travel Inn motel.[19]  The hose described by Deputy Spencer matched the description of a separate piece of hose Deputy Dobbins independently had observed at Robby Forbes' property the day before, *i.e.* March 26, 2012, when he conducted his initial investigation into the burglary.[20]

Deputy Dobbins immediately transported Plaintiff to the Humphreys County jail where he was booked in on charges of commercial and residential burglary in relation to Forbes' property on March 27, 2012.[21]  While incarcerated from March 27, 2012 to April 4, 2012, Plaintiff had no interaction whatsoever with Sheriff Roseman.[22]  Similarly, besides his initial interaction with Deputy Dobbins on March 27, 2012, Plaintiff had no other interaction with Deputy Dobbins during this initial period of incarceration.[23]  Moreover, Plaintiff admittedly

---

[16]  *See id.* at Pg. 117:4 through 118:14.

[17]  *See id.* at Pgs. 118:22 through 119:8.

[18]  *See* Exhibit "C" to Motion, Pg. 120:15-22; *see also* Exhibit "B" to Motion, Pg. 12:2-6, 51:21 through 54:17.

[19]  *See* Declaration of Woody Spencer, attached as Exhibit "D" to Motion.

[20]  *See* Exhibit "B" to Motion, Pgs. 51:24 through 52:14.

[21]  *See id.* at Pgs. 15:17 through 16:1.

[22]  *See* Exhibit "C" to Motion at Pg. 140:4-8.

[23]  *See id.* at Pgs. 139:19 through 140:3.

suffered no injuries from March 27, 2012 to April 4, 2012 while incarcerated at the Humphreys County jail.[24]

Following his release on or about April 4, 2012, Deputy Dobbins obtained a written statement from eyewitness, Robert Earl Wade, and warrants were issued by the Humphreys County Justice Court for Plaintiff's arrest for commercial and residential burglary on April 18, 2012.[25] Plaintiff was re-arrested and charged with commercial burglary and residential burglary on April 24, 2012 pursuant to the arrest warrants, after Deputy Dobbins was informed that Plaintiff had been booked into the Indianola city jail by the Indianola Police Department on misdemeanor charges of shoplifting ribeye steaks from Wal-Mart earlier that day.[26] Because Humphreys County had outstanding felony warrants for Plaintiff's arrest on burglary charges (and the shoplifting charge by the Indianola Police Department was only a misdemeanor), Deputy Dobbins traveled to the Indianola city jail on April 24, 2012 and arrested Plaintiff for the burglary of Robby Forbes' property.[27] He then transported Plaintiff back to the Humphreys County jail.[28] Sheriff Roseman was not involved in Plaintiff's arrest on April 24th and otherwise had no personal interaction with Plaintiff whatsoever during his second period of incarceration from April 24, 2012 through June 29, 2012.[29]

After being booked into the jail on April 24th, Plaintiff received a bond hearing on May 1, 2012 but could not post bond.[30] Plaintiff apparently obtained money to bond out of jail at some

---

[24] *See id.* at Pgs. 143:21 through 144:17.

[25] *See* Statement of Robert Earl Wade, attached as Exhibit "E" to Motion; *see* General Warrant for Residential Burglary, dated April 18, 2012, attached as Exhibit "F" to Motion; and *see* General Warrant for Commercial Burglary, dated April 18, 2012, attached as Exhibit "G" to Motion. Deputy Dobbins already had spoken with Wade about his observation of Plaintiff on Forbes' property on March 26, 2012. *See* Exhibit "B" to Motion, Pg. 9:2-19. He obtained a written statement from Wade to this effect on April 18, 2012. *See* Exhibit "E" to Motion.

[26] *See* Exhibit "C" to Motion, Pgs. 148:4 through 149:9 and 154:18 through 157:16.

[27] *See id.* at Pgs. 152:13-24.

[28] *See id.*

[29] *See id.* at Pgs. 160:5-11 and 181:17 through 182:25.

[30] *See id.* at Pgs. 161:1-19 and 164:9-16.

point in time before June 29, 2012 (when he was released upon a no bill returned by a Humphreys County grand jury on the burglary charges); however, Plaintiff instructed his family members to save their money and not bond him out of jail.[31]  By this time, Plaintiff already had decided to file his lawsuit against the County Defendants.[32]  Thus, at least partially by his own choosing, Plaintiff remained incarcerated on the subject burglary charges until June 29, 2012.[33]

During his second incarceration from April 24, 2012 to June 29, 2012, Plaintiff claims he was subjected to abusive treatment by Deputy Dobbins such as being left with no clothes, no bed linens, and extreme air conditioning during a period of administrative segregation beginning on May 21, 2012.  Aside from this period of administrative segregation, Plaintiff also claims he was verbally taunted by Deputy Dobbins but admits he suffered no other injuries at the hands of any Humphreys County defendants.[34]  Additionally, despite such claims of wrongdoing while incarcerated at the Humphreys County jail (which are denied by County Defendants), Plaintiff admitted at his deposition that he is not claiming he was falsely arrested on April 24, 2012.[35]

## III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.  *Fed. R. Civ. P.* 56(c).  To avoid summary judgment, a plaintiff must produce evidence of "specific facts showing the existence of a genuine issue for trial."  *Foulston Siefkin LLP v. Wells Fargo Bank of Texas N. A.*, 465 F.3d 211, 214 (5th Cir. 2006).  A factual issue is "'material' if its resolution could affect the outcome of the action."  *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to

---

[31] *See* Exhibit "C" to Motion, Pgs. 166:24 through 169:11.

[32] *See id.*

[33] *See id.*

[34] *See id.* at Pgs. 183:1-10.

[35] *See* [Doc. 1, ¶¶12-13]; *see also* Exhibit "C" to Motion, Pgs. 157:9-16.

satisfy' the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted). Moreover, "[w]here critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Custer v. Murphy Oil USA, Inc*., 503 F.3d 415, 421 (5th Cir. 2007) (internal quotations omitted).

## IV.  ARGUMENT AND AUTHORITIES

### A.  Summary Judgment is Proper on Plaintiff's Fourth Amendment Claims for False Arrest and False Imprisonment Under 42 U.S.C. § 1983.

Plaintiff has alleged false arrest and false imprisonment claims against the County Defendants in relation to two separate arrests and periods of incarceration at the Humphreys County jail: (1) Plaintiff's arrest on March 27, 2012 and subsequent incarceration from March 27, 2012 to April 4, 2012 and (2) Plaintiff's arrest on April 24, 2012 and subsequent incarceration from April 24, 2012 to June 29, 2012. For the following reasons, the County Defendants are entitled to summary judgment on these claims.

#### i.  All County Defendants Are Entitled to Summary Judgment on Plaintiff's False Arrest Claim Arising from Plaintiff's March 27, 2012 Arrest and Sheriff Roseman and Humphreys County Are Likewise Entitled to Summary Judgment on Plaintiff's False Imprisonment Claim Arising From Plaintiff's Incarceration From March 27, 2012 to April 4, 2012

Each of the County Defendants have different reasons why they are entitled to summary judgment on Plaintiff's false arrest and false imprisonment claims arising out of his arrest on March 27, 2012 and first incarceration at the Humphreys County jail from March 27, 2012 to April 4, 2012. Each will be taken in turn.[36]

---

[36] Again, it is conceded that fact issues exist with respect to Plaintiff's claim that he was unlawfully denied a probable cause hearing by Deputy Dobbins within 48 hours of his first arrest on March 27, 2012 and Deputy Dobbins does not move for summary judgment on this claim. Deputy Dobbins does, however, move for summary judgment on Plaintiff's false arrest claim in relation to his March 27, 2012 arrest.

### a.      No Personal Involvement by Sheriff Roseman

It is well settled that a state actor such as Sheriff Roseman cannot be liable absent any personal involvement in the incidents which gave rise to the civil action.  *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2009) ("Liability under the doctrine of respondeat superior is not cognizable in § 1983 actions.").  In other words, section 1983 does not authorize vicarious or respondeat superior liability of supervisors.  *See Rios v. City of Del Rio, Texas*, 444 F.3d 417, 425 (5th Cir. 2006); *see also  Cox v. Irby*, 281 Fed. Appx. 390, 391 (5th Cir. 2008) (see attached as Ex. 1);   *Vinning-El v. Evans, et. al.*, 657 F.3d 591, 592 (7th Cir. 2011) (Easterbrook, J.) ("Section 1983 does not authorize "supervisor liability.").  Section 1983 creates liability only for a defendant's personal acts or decisions, or if there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.   *See Rios*, 444 F.3d at 425.

Here, Plaintiff has no evidence that Sheriff Roseman had any personal involvement in his March 27, 2012 arrest or subsequent incarceration from March 27, 2012 to April 4, 2012.   In fact, he admitted at his deposition that Sheriff Roseman was not personally involved in these incidents:

> Q.  Deputy Dobbins was not at the Travel Inn motel on
>      March 27th, 2012, when you were arrested, correct?
>
> A.  First time, no, he wasn't.
>
> Q.  On March 27th, 2012.
>
> A.  That's right.
>
> Q.  Sheriff Roseman was not at the Travel Inn motel in
>      Indianola on that day either, was he?
>
> A.  That's right.

Q.  Nobody from the Humphreys County Sheriff's Department was at the Travel Inn motel on March 27, 2012, correct?

A.  That's right.[37]

. . .

Q.  You don't have any personal knowledge as to why Deputy Dobbins arrested you on March 27, 2012 do you?

A.  No, I don't.

Q.  Sheriff Roseman wasn't involved in that arrest at all, was he?

A.  I never saw Bubba [i.e. Sheriff Roseman]

Q.  Okay, Is that a no?

A.  No. I didn't see Bubba.

Q.  He was not involved, correct?

A.  Correct.

Q.  Nobody –

A.  They had to be involved because they was the ones that had Indianola to arrest me and bring me to them.

Q.  Not asking what you believe to be the case.  I'm asking whether or not you have personal knowledge.

A.  Personal knowledge, no, I don't know.  I don't know.  I don't know what happened.

Q.  And nobody else other than Deputy Dobbins was involved in the March 27, 2012, arrest, correct?

A.  Correct.

Q.  Okay, With the Humphreys County Sheriff's Department.

---

[37]  *See* Exhibit "C" to Motion, Pgs. 118:22 through 119:8.

A.   Correct.[38]

. . .

Q.   Okay.  During that period of incarceration from March 27, 2012 to April 4, 2012, you didn't have any interaction with Sheriff J.D. Roseman, did you?

A.   Never saw him.[39]

Because Plaintiff has admitted that Sheriff Roseman had no personal involvement in his March 27, 2012 arrest and subsequent incarceration from March 27, 2012 to April 4, 2012, summary judgment should be granted to Sheriff Roseman in his individual capacity on these claims.  *See Rios*, 444 F.3d at 425.

### b.   No Constitutional Violation Occurred During Plaintiff's Arrest on March 27, 2012 and Deputy Dobbins is Otherwise Entitled to Qualified Immunity

As to his alleged false arrest on March 27, 2012, Plaintiff claims that Deputy Dobbins did not have a warrant and otherwise lacked probable cause to arrest him.[40]  The constitutional claim of false arrest requires a showing of no probable cause.  *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)).  "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"  *See id.*  (citing *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)).  "If an officer reasonably but mistakenly believes that probable cause exists, he is entitled to qualified

---

38   *See id.* at Pgs.  121:17 through 122:16.

39   *See* Exhibit "C" to Motion, Pg. 140:4-8.

40   *See* [Doc. 1 at ¶ 17].  Plaintiff uses different dates in his Complaint; however, as his deposition testimony will show, there is no dispute as to the arrest dates and incarceration periods in question.

immunity." *Rameriz v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (citing *Club Retro, LLC*, 568 F.3d at 206).

Here, probable cause existed for Deputy Dobbins to arrest Plaintiff on March 27, 2012 for burglary in relation to Robby Forbes' property based on the following:

1. Robert Earl Wade's eyewitness verbal statement to Dobbins on March 26, 2012 that Plaintiff was seen in his truck on Forbes' property shortly before the burglary occurred[41];

2. Deputy Dobbins' first hand factual investigation into the Forbes' burglary on March 26, 2012, during which Forbes informed Dobbins of his belief that his cousin and former employee, Plaintiff, may have burglarized his property based on previous experiences where Forbes' had been burglarized when Plaintiff was seen near his property[42];

3. Deputy Dobbins' first hand observation of a hose that was used by the burglar to siphon gas out of Forbes' air compressor on or about March 26, 2012[43]; and

4. Deputy Woody Spencer's subsequent statement to Deputy Dobbins on March 27, 2012, before Plaintiff's arrest, that he had observed a similar 4-6 foot piece of hose in the back of Plaintiff's pick-up truck when he was taken into custody by the Sunflower County Sheriff's Department at the Travel Inn motel earlier that day.[44]

Based on this information, Deputy Dobbins had probable cause to arrest Plaintiff for the subject burglaries. If nothing else, this much is evidenced by the fact that the Humphreys County Justice Court later found that probable cause existed to arrest Plaintiff for these crimes (and issued warrants against Plaintiff for residential and commercial burglary on April 18, 2012) based on virtually identical information. The only evidentiary development between Deputy Dobbins' arrest of Plaintiff on March 27, 2012 and his subsequent arrest on April 24, 2012 was the fact that, by the latter date, Deputy Dobbins had obtained a written statement from Robert

---

[41] *See* Exhibit "B" to Motion, Pgs. 9:2-20,

[42] *See* Exhibit "A" to Motion, Pgs. 9:5 through 10:7, 7:16-24, and 21:18 through 22:15.

[43] *See* Exhibit "B" to Motion, Pgs. 51:24 through 52:14.

[44] *See id.* at Pgs. 51:19 through 54:2; *see also* Exhibit "D" to Motion.

Earl Wade verifying what Wade told Deputy Dobbins during their initial telephone conversation on March 26, 2012.[45]  Again, however, Deputy Dobbins already had Wade's eyewitness account as of March 26, 2012 before Plaintiff's arrest – he just did not have it in written form.  Moreover, Wade knew Plaintiff's identity and had seen Plaintiff fishing in the surrounding area on numerous occasions.[46]  Therefore, he was a reliable eyewitness who identified Plaintiff as the person he saw on Forbes' property prior to the burglary at issue.  *See United States v. Blount*, 123 F.3d 831, 835 (5th Cir.1997) (the en banc Court held that under the "totality of the circumstances" standard, "absent specific reasons for police to doubt his or her truthfulness, an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration).  Thus, based on the totality of the circumstances at the time, Deputy Dobbins had probable cause to arrest Plaintiff.  *See Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir.2000) (In determining the existence of probable cause, a court takes into consideration the totality of the circumstances within a police officer's knowledge at the time of the arrest.); *see also United States v. Levine*, 80 F.3d 129, 132 (5th Cir.1996).

However, even if probable cause did not exist for Plaintiff's arrest on March 27, 2012, Deputy Dobbins is nonetheless entitled to qualified immunity with respect to this false arrest claim if he reasonably, but mistakenly, believed that probable cause existed.  *See Rameriz*, 716 F.3d at 375.  At a minimum, Deputy Dobbins reasonably believed (even if he mistakenly did so) that he had probable cause to arrest Plaintiff on March 27, 2012.  Accordingly, Plaintiff suffered no constitutional violation in relation to his March 27, 2012 arrest; however, even if he did, Deputy Dobbins is still entitled to qualified immunity.

---

[45]  *See* Exhibit "E" to Motion.
[46]  *See* Deposition Excerpts of Robert Earl Wade, Pg. 6:1-14, attached as Exhibit "H" to Motion.

    **c. Plaintiff Has Failed to Plead (And Cannot Prove) A Policy or Custom of Humphreys County that Led to His Allegedly False Arrest and False Imprisonment on March 27, 2012.**

Plaintiff's claims against Humphreys County, Mississippi (and Sheriff Roseman and Deputy Dobbins in their official capacities)[47] are non-starters since Plaintiff has failed to even plausibly allege in his Complaint any facts that, if true, would support his § 1983 claims for false arrest and false imprisonment against the County.[48]  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (To state a valid claim for relief, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face.")).  For this reason alone, his claims against the County fail as a matter of law.

"Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). A § 1983 plaintiff must allege an independent substantive basis for relief.  In other words, he or she must first identify a protected life, liberty, or property interest, and then show how government action resulted in the interest's deprivation.  *See Baker v. McCollan*, 443 U.S. 137, 140 (1979).

As to municipalities and other political subdivisions, such as counties, the theory of *respondeat superior* does not apply in § 1983 actions.  *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339 (5th Cir. 1989).  Rather, a county, like a municipality, is subject to suit only where a plaintiff sufficiently demonstrates injury from an official policy or custom, as distinguished from mere tortious

---

[47]  *See generally* [Doc. 1].

[48]  A suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent.  *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999) (citing *McMillian v. Monroe County, Ala*, 520 U.S. 781, 785, n. 2 (1997) (other citations omitted)).  Accordingly, Humphreys County  is the proper party in interest with respect to Plaintiff's claims against Sheriff Roseman and Deputy Dobbins in their official capacities.

conduct. *See, e.g., Beattie v. Madison County School Dist.*, 254 F.3d 595, 600 n.2 (5th Cir. 2001).  The Fifth Circuit has defined such a policy as:

> 1.  A policy statement, ordinance, regulation or decision that is officially  adopted and promulgated by the municipality's lawmaking officers or by  an official to whom the lawmakers have delegated policymaking  authority; and
>
> 2.  A persistent widespread practice of city officials or employees, which,  although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must  be attributable to the governing body of the municipality or to an official to  whom that body has delegated policymaking authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016 (1985).

Additionally, the plaintiff "must identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Bennett*, 728 F.2d 762 at 767.   It is the plaintiff's burden to identify a county policy or custom which proximately resulted in the plaintiff's constitutional injury. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).  "Only upon a demonstration of a policy or custom to violate the constitution, which is not to be confused with proof of policies supporting tortious conduct, can the municipality be held liable under section 1983." *Brown v. City of Hazlehurst*, 741 So.2d 975, 981 (Miss. Ct. App. 1999).   Moreover, in *Brown*, the Court emphasized the need for specific fact allegations where a litigant seeks redress based on a purportedly illegal policy or custom, stating:

> [A] plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation, or that her injuries resulted from the execution of the official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*See Brown*, 741 So.2d at 981 (citing *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997)).

Here, Plaintiff's Complaint is completely devoid of any allegations that a policy or custom of Humphreys County led to his allegedly false arrest and false imprisonment on March 27, 2012. However, even if it did, Plaintiff has no evidence of an unlawful policy or custom of Humphreys County that led to these alleged constitutional violations (this, of course, assumes *arguendo* that Plaintiff suffered constitutional violations in relation to these claims). In fact, Humphreys County has a policy against unlawful arrests and seizures.[49] Accordingly, Plaintiff's false arrest and false imprisonment claims against Humphreys County in relation to Plaintiff's March 27, 2012 arrest and incarceration from March 27, 2012 to April 4, 2012 are due to be dismissed.

### ii. County Defendants Are Entitled to Summary Judgment on Plaintiff's False Arrest and False Imprisonment Claims Arising From His Arrest on April 24, 2012 and Subsequent Incarceration from April 24, 2012 to June 29, 2012.

Each of the County Defendants again have different reasons why they are entitled to summary judgment on Plaintiff's false arrest and false imprisonment claims arising from his second arrest on April 24, 2012 and subsequent incarceration at the Humphreys County jail from April 24, 2012 to June 29, 2012. Each will be taken in turn.

### a. No Personal Involvement by Sheriff Roseman

Similar to Plaintiff's first arrest and incarceration, Sheriff Roseman had no personal involvement in Plaintiff's arrest on April 24, 2012 and subsequent incarceration from April 24, 2012 to June 29, 2012. This much was admitted by Plaintiff at his deposition:

---

[49] *See* Humphreys County Sheriff's Department Policies and Procedures – Arrest Procedures, attached to Motion as Exhibit "I".

Q. Sheriff Roseman did not have any personal involvement in your arrest on April 24, 2012, did he?

A. Not that I know of.[50]

. . .

Q. Did Deputy Dobbins do anything else to you while you were incarcerated from April 24th to June 29th?

A. Just questioned me and all. I wouldn't talk to him no more. I wouldn't talk to none of them.

Q. Is that no?

A. No. They didn't do nothing else to me. I wouldn't let them.

Q. Okay, Sheriff Roseman didn't do anything personal to you –

A. I never saw the sheriff the whole time.

Q. If you'll let me ask my question. I appreciate that you understand you may know what I'm going to ask you, but for her purposes – for the court reporter purposes, we have to adhere to this formality. Okay? Sheriff Roseman didn't have any personal involvement in your incarceration from April 24th, 2012 to June 29, 2012, did he?

A. I can't say no because he knew I was back there. He was involved.

Q. Sheriff Roseman didn't do anything to you personally, did he?

A. No. He didn't do anything, but he knew what was going on. He let it happen.

Q. How do you know that?

A. Because he's the sheriff. He's supposed to know what's going on.

Q. No. How do you know he –

A. Because his sister is the jailer and you know he's going to talk to his sister.

Q. I'm not asking you your beliefs. I'm not asking you to speculate. I'm asking you: What proof do you have that Sheriff Roseman knew –

A. I don't have no proof. I don't have no proof.[51]

---

[50] *See* Exhibit "C" to Motion, Pgs. 160:5-7.
[51] *See id.* at Pgs. 181:17 through 182:25.

Because Plaintiff has no evidence of Sheriff Roseman's personal involvement in his arrest on April 24, 2012 or his subsequent incarceration from April 24, 2012 to June 29, 2012, Sheriff Roseman is entitled to summary judgment on these claims.  *See Rios*, 444 F.3d at 425.

> **b. Plaintiff Suffered No Constitutional Violation In Relation to His Second Arrest and Incarceration But, Even If He Did, Deputy Dobbins is Nonetheless Entitled to Qualified Immunity.**

Plaintiff also has sued Deputy Dobbins in relation to his second arrest on April 24, 2012 and his second period of incarceration at the Humphreys County jail from April 24, 2012 to June 29, 2012.  However, Deputy Dobbins had procured valid arrest warrants from the Humphreys County Justice Court by April 18, 2012 – which served as the basis for his arrest on April 24, 2012 and subsequent incarceration.

It has long been the law that an arrest pursuant to a properly issued warrant is not actionable under the Fourth Amendment.  *See e.g., Rykers v. Alford*, 832 F.2d 895, 898 (5th Cir. 1987).  The rationale for this rule is simple: if the "facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party, even if the officer acted with malice in procuring the warrant or indictment." *McAllister v. Desoto Cnty., Miss.*, 2011 WL 2516260 (N.D. Miss. June 23, 2011)(see attached as Ex. 2), aff'd, 470 F. App'x 313 (5th Cir. 2012); *see also Fitch v. Morrow*, 199 F. App'x 347, 350 (5th Cir. 2006)(see attached as Ex. 3); *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982).  Here, based on the undisputed facts, Fifth Circuit precedent requires dismissal of Plaintiff's false arrest/false imprisonment claims arising out of his April 24, 2012 arrest and subsequent incarceration based on the existence of valid warrants for Plaintiff's arrest on April 24, 2012.[52]  It matters not that Plaintiff was ultimately no billed by a Humphreys County grand jury.

---

[52] *See* Exhibits "F" and "G" to Motion.

"The Constitution does not guarantee that only the guilty will be arrested." *Smith v. Gonzalez*, 670 F.2d 522, 526 (5th Cir. 1982) (citing *Baker v. McCollan*, 99 S.Ct. 2689, 2695 (1979)). Because Plaintiff has not suffered a constitutional violation in relation to his April 24, 2012 arrest, these federal claims asserted against all County Defendants should be dismissed. However, even if Plaintiff could show an underlying constitutional violation, Deputy Dobbins is still entitled to qualified immunity since he reasonably (even if mistakenly) believed the warrants gave him probable cause to re-arrest Plaintiff on April 24, 2012. *Ramirez*, 716 F.3d at 375.

### c. Plaintiff Has Failed to Plead (And Cannot Prove) A Policy or Custom of Humphreys County that Led to His Alleged False Arrest and False Imprisonment on April 24, 2012.

For the same reasons stated above in relation to Plaintiff's false arrest and false imprisonment claims arising out of his March 27, 2012 arrest, Plaintiff has similarly failed to plead (or prove) any policy or custom of Humphreys County that led to his allegedly unlawful arrest and imprisonment on April 24, 2012. For the sake of brevity, County Defendants will not recite herein the previous arguments and authorities made in support of its position on this point but, instead, will merely incorporate the same by reference into this section of the brief.

### B. Summary Judgment is Proper on Plaintiff's Fourteenth Amendment Claims for Unlawful Conditions of Confinement and Episodic Acts by Deputy Dobbins

"Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Jones v. Lowndes County, Miss.*, 2010 WL 4643242, *6 (N.D. Miss. 2010)(see attached as Ex. 4) (citing *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (further citation omitted)). Here, Plaintiff's Complaint alleges a variety of both under the Fifth[53] and Fourteenth

---

[53] Again, Plaintiff's Complaint alleges claims under the Fifth Amendment. However, the Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor, neither of which occurred here. *See* [Doc. 1, ¶ 19].

Amendments, stating, in pertinent part, that "[a]s a proximate cause of the Defendant's unlawful and malicious detention and confinement, the Plaintiff was deprived of his liberty…."[54]

Plaintiff's "condition of confinement" claims are based on the fact that he was not afforded a bond hearing until May 1, 2012 – seven (7) days after his April 24, 2012 arrest (which again, was based on warrants)[55] – and that he allegedly was not allowed to make a telephone call to his family during his incarceration.[56]

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the United States Supreme Court held:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest."

*See id* at 535–36 (internal citation omitted, alteration original) (quotation omitted).  Accordingly, when a person has received the benefit of a judicial determination of probable cause for their arrest, "the Government may ... detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *See id.* at 536.

The task for the Court, therefore, is to determine whether the conditions allegedly imposed on Plaintiff — as a pretrial detainee — were "imposed for the purpose of punishment" or whether they were incident to "some other legitimate governmental purpose." *See id.* at 538.

---

54  *See* [Doc. 1, ¶ 19].

55  *See Baker v. McCollan*, 99 S.Ct. 2689 (1979) (Since adversary hearing is not required, and since probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to warrant issued by magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial.).

56  *See id.* at ¶¶ 9 and 11.

As recently noted by the U.S. District Court for the Northern District in Mississippi in its 2010 *Jones* opinion, it is unclear whether the length of pretrial detention prior to the setting of bail is even the sort of "condition" contemplated by the *Wolfish* analysis; nevertheless, assuming *arguendo* that it is, *Jones* and the undisputed facts of the present case demonstrate that the County Defendants' seven day delay in presenting Plaintiff to Humphreys County Justice Court Judge Shirley Cummings for the purpose of setting bail was reasonable and necessary given the fact that it was caused by factors outside of County Defendants' control – namely, the unavailability of the judge until May 1, 2012.[57] *See Jones*, 2010 WL 4643242 at *6 ("While it is unclear whether the length of pretrial detention is the sort of "condition" contemplated by *Bell's* Fourteenth Amendment analysis, it is apparent from the undisputed facts of the present case that the length of Plaintiffs' pretrial detention was reasonably related to a legitimate governmental objective—acquiring a determination of probable cause by a judicial officer."). The mere fact that the *Jones* Court recognized that it is not clearly established whether the length of pretrial detention is the sort of "condition" contemplated by *Wolfish's* Fourteenth Amendment analysis is enough to entitle Deputy Dobbins to qualified immunity on this claim. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were *'clearly established'* at the time it was taken.") (italics added).

Moreover, a seven day period of incarceration (that is premised on a warrant based arrest and, hence, does not require a probable cause hearing within 48 hours of the arrest) before a bond hearing is held is not a constitutional violation. *See id.* at 4 ("Defendants' failure to present Plaintiffs before a magistrate for purposes of setting bail within forty-eight hours of arrest does

---

[57] *See* Exhibit "B" to Motion, Pgs. 28:20 through 29:13.

not constitute a Fourth Amendment violation.").  Phrased more succinctly, "there is no absolute constitutional right to bail."  *See id.* at *7, n. 3.  However, even if Plaintiff could show that his slightly delayed bond hearing was a constitutional violation (which it is not), he also must "show 'that ... defendant[s] w[ere] either personally involved in the deprivation or that [their] wrongful actions were causally connected to the deprivation.'" *See id.* (citation omitted).  Here, they clearly were not.  Plaintiff was denied a bond hearing not because of Dobbins's conduct but, again, because of the immediate unavailability of the judge.[58]  Therefore, even if the Fourteenth Amendment is applicable in this context, Plaintiff has failed to show that any individual County Defendant caused a constitutional violation to occur by holding Plaintiff's bond hearing on May 1, 2012.  Moreover, Plaintiff certainly cannot show a policy or custom of Humphreys County that led to this alleged constitutional violation.

As to his next challenged condition of confinement, Plaintiff complains that he was not allowed to make a telephone call during his incarceration at the Humphreys County jail.[59]  However, Plaintiff's Complaint acknowledges that he had access to a telephone; he just did not have funds on his inmate account to make a direct call out and, otherwise, had family members (*i.e.* father and son) who could not accept collect calls from the jail.[60]  Nevertheless, despite these facts, Plaintiff had access to a "free" telephone throughout his incarceration at the Humphreys Count jail.[61]  Moreover, even if Plaintiff could prove he was denied access to a telephone, he admittedly made phone calls to his family through a "bootlegged" phone that he somehow managed to get into the jail.[62]  Thus, despite his contentions, Plaintiff has suffered no constitutional violations or injuries in relation to this alleged condition of confinement.

---

[58] *See* Exhibit "B" to Motion, Pgs. 28:20 through 29:13.
[59] *See* [Doc. 1, ¶ 11].
[60] *See id.*
[61] *See* Exhibit "B" to Motion, Pgs. 58:17 through 62:12.
[62] *See* Exhibit "C" to Motion, Pgs. 216:15 through 217:16.

In the end, even when Plaintiff's allegations are taken as true (as they must be for purposes of this Motion), the County Defendants' method for allowing inmates to make telephone calls is reasonably related to their legitimate need to have a controlled and uniform method by which they make telephones available to inmates. That is exactly the kind of standard process for inmate telephone access that Deputy Dobbins described that Plaintiff was afforded at his deposition.[63]

Finally, Plaintiff alleges several episodic acts of Deputy Dobbins that he claims violated his Fourteenth Amendment rights: (1) his alleged placement into administrative segregation by Deputy Dobbins under "cruel and inhuman" conditions[64] and (2) Deputy Dobbins' alleged taunting of him during his incarceration.[65] Where the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an "episodic act or omission" case and is not amenable to review under the *Wolfish* test. An episodic act or omission of a state jail official such as Deputy Dobbins does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647-648 (5th Cir. 1996) (en banc).

With respect to the claims of unlawful episodic acts by Deputy Dobbins, it first must be noted that they are all denied in full. Nevertheless, even when taking Plaintiff's allegations as true, Plaintiff still cannot show that Deputy Dobbins acted with deliberate indifference with respect to any of Plaintiff's needs. For example, while Plaintiff has testified that Deputy Dobbins was present during his placement into administrative segregation on May 21, 2012 (which is denied by Deputy Dobbins), he admittedly has no personal knowledge or other

---

[63] *See* Exhibit "B" to Motion, Pgs. 58:17 through 62:12.
[64] *See* [Doc. 1, ¶ 13].
[65] *See id.* at ¶ 12.

evidence to prove that Deputy Dobbins turned the air conditioning system down "extremely low, thereby causing the Plaintiff to endure significant discomfort in the way of continuous exposure to cold temperatures with no clothing or bed linen."[66]  To this end, Plaintiff testified:

> Q.  I think you just testified to this that it's your belief that the air conditioning system was turned down low, but you don't have any personal knowledge or proof who turned the air conditioning down.
>
> A.  I can't prove nothing.[67]

Plaintiff's further claim that Deputy Dobbins taunted him over the intercom system while he was in administrative segregation also fails as a matter of law.[68]  "Verbal abuse by prison guards does not give rise to a cause of action under § 1983."  *Morgan v. Corrections Corp. of America, Inc.*, 2010 WL 1710809, *2 (N.D. Miss. 2010)(see attached as Ex. 5) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993); *Siglar v. Hightower*, 112 F.3d 191(5th Cir. 1997)). For these reasons, Plaintiff's claims for unlawful conditions of confinement and episodic acts should be dismissed.

**C.  Summary Judgment is Proper on Plaintiff's Malicious Prosecution Claim under 42 U.S.C. § 1983**

It is not clear whether Plaintiff alleges his malicious prosecution claim against the County Defendants under 42 U.S.C. § 1983 or state law.[69]  To the extent it is the former, Plaintiff's claim must be dismissed since "malicious prosecution" standing alone is no violation of the U.S. Constitution and that to proceed under 42 U.S.C. § 1983 such claim must rest upon a denial of rights secured under federal and not state law.  *See Haggarty v. Texas Southern Univ*., 391 F.3d 653, 657 (5th Cir. 2004) (citing *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc)).

---

[66] *See id.* at ¶ 13.
[67] *See* Exhibit "C" to Motion, Pg. 184:5-9.
[68] *See* [Doc. 1, ¶ 12].
[69] *See id.* at ¶¶ 20 – 22.

**D.     Summary Judgment is Proper on Plaintiff's Remaining State Law Claims**

In addition to the federal law claims discussed above, Plaintiff also has asserted a variety of state law claims.  Each will be addressed in turn.

**i.     Count Three – Malicious Prosecution (Under Mississippi Law)**

As previously stated, Plaintiff's Complaint does not clearly indicate whether he has asserted a malicious prosecution claim under federal or state law.  To the extent it is the former, such claim is due to be dismissed for the reasons stated in Section C, above.  However, in the event Plaintiff has brought this claim under Mississippi law, Plaintiff still cannot make out a prima facie case of malicious prosecution.

To do so, Plaintiff must prove the following: "(1) the institution of a criminal [or civil] proceeding; (2) by, or at the instance of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of."  *Scribner v. Dillard*, 269 F. Supp. 2d 716 (N.D. Miss. 2003) (citing *Alpha Gulf Coast, Inc. v. Jackson*, 801 So.2d 709, 721 (Miss. 2001) (other citations omitted)).  Here, Plaintiff is unable to establish elements four or five.

Specifically, Plaintiff cannot show that Deputy Dobbins (who Plaintiff has admitted was the only individual Humphreys County actor involved in his arrests) acted with any malicious intent with respect to either arrest.  To this end, Plaintiff testified at his deposition, in pertinent part:

> Q.  You don't have any personal knowledge as to what information Deputy Dobbins had when he arrested you on March 27th, 2012, do you?
>
> A.   I don't know what he had.

> Q. And you don't know what his intent was in arresting you on March 27, 2012 correct?
>
> A. No. I don't know his intent. All I know is what he told me when I got in the truck.
>
> Q. What did he tell you?
>
> A. That they was going to feed me for 15 years because I was going to prison – going back to prison.
>
> Q. Did he say anything else to you?
>
> A. He was rude to me.[70]

As to his second arrest on April 24, 2012, Plaintiff admitted that such arrest was not even false.[71] Based on this testimony, it is clear that Plaintiff has no admissible evidence that Dobbins acted with malice. Moreover, the Fifth Circuit has held a "facially valid arrest warrant satisfies the Fourth Amendment prerequisites." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982); *Daniel v. Grimmett*, 2010 WL 1375632 (N.D. Miss. 2010)(see attached as Ex. 6). Due to this, probable cause existed for the institution of the proceedings against Plaintiff, causing Plaintiff's malicious prosecution claim to fail. *See Daniel*, 2010 WL 1375632.

### ii. Count Four – Malicious Abuse of Process (Under Mississippi Law)

Under Mississippi law, the elements of an abuse of process claim are: (1) that a party made illegal use of process; (2) that the party had an ulterior motive; and (3) damage resulted from the perverted use of process. *McLain v. West Side Bone and Joint Center*, 656 So. 2d 119 (Miss. 1995); *Smith v. Luther*, 973 F. Supp. 601 (N.D. Miss. 1997) (recognizing the propriety of dismissal of an abuse of process claim where the conduct complained of preceded the issuance of the warrant, as opposed to transpiring subsequently and finding an abuse of process claim to be ". . . simply a restatement of plaintiffs' malicious prosecution claim."). The distinguishing factor

---

[70] *See* Exhibit "C" to Motion, Pg. 123:11-24.
[71] *See id.* at Pg. 157:9-16.

between an abuse of process claim and a malicious prosecution claim is that malicious prosecution concerns maliciously causing process to issue, while abuse of process concerns the improper use of process after it has been issued. *Dunagin v. City of Oxford, Miss.*, 489 F. Supp. 763 (N.D. Miss 1980) (reversed on other grounds). Here, the conduct complained of was Deputy Dobbins' alleged failure to perform even a cursory investigation *before* obtaining the warrants, making Plaintiff's abuse of process claim repetitive of his malicious prosecution action.[72] Further, there was no illegal use of process. Plaintiff's second arrest was procured by warrant, and his charges were presented to the grand jury. Similarly, there has been no showing of an ulterior motive sufficient to support this claim.

### iii.    Count Five – Loss of Personal Property

Count Five of Plaintiff's Complaint merely alleges the loss of personal property as an element of damages in this case and does not otherwise plausibly allege any comparable state law claim for conversion, trespass to chattels, etc.[73] Nevertheless, this claim would fail even if viewed as an independent cause of action since Plaintiff has no evidence that the County Defendants had anything to do with the Travel Inn motel or any other third person disposing of his personal property or 1994 GMC pick-up truck while he was incarcerated at the Humphreys County jail. Plaintiff admitted at his deposition that no County Defendants were even present at the locations where he was initially picked up or arrested by the Sunflower County Sheriff's Department on either arrest date.[74] Therefore, they could not have caused the disposal of Plaintiff's personal property.

### iv.    Count Six – Intentional Infliction of Emotional Distress

---

[72] *See* [Doc. 1, ¶ 13].
[73] *See* [Doc. 1, ¶¶ 26-27].
[74] *See* Exhibit "C" to Motion, Pgs. 116:5 through 119:8, 148:4-10, 154:18 through 155:5, and 160:5-11.

Plaintiff's intentional infliction of emotional distress claim should likewise be dismissed. "The standard for [this claim] in Mississippi is very high." *Hatley v. Hilton Hotels Corporation*, 308 F.3d 473 (5th Cir. 2002). Even taking all of Plaintiff's allegations as true (in addition to considering his admissions), Deputy Dobbins' conduct in this matter was not "wanton and willful [such that] it would evoke outrage or revulsion" as to establish this claim. *Leaf River Forrest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995). Plaintiff has no evidence to support any argument to the contrary.

### v.     Count Seven – Intentional Infliction of Physical Harm

Count Seven is the state law equivalent of battery. An assault occurs where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other is thereby put in such imminent apprehension. *Webb v. Jackson*, 583 So.2d 946, 951 (Miss.1991) (citing Restatement (Second) of Torts § 21 (1965)). A battery goes one step beyond an assault in that a harmful contact actually occurs. *See id.* Here, aside from the alleged arrests, one incident of administrative segregation, and verbal taunting initiated by Deputy Dobbins, Plaintiff admitted that Deputy Dobbins did not do anything else to him and did not otherwise cause him any harm; this admission causes his battery claim to fail.[75]

### vi.     Counts Eight and Nine – Negligence and Reckless Disregard for Plaintiff's Safety and Well Being

Plaintiff's Complaint alleges that Deputy Dobbins was negligent in arresting him without conducting an adequate investigation into the subject burglary. However, as demonstrated above, Deputy Dobbins had probable cause and/or warrants to secure Plaintiff's arrest on March 27, 2012 and April 24, 2012. Additionally, with respect to this state law claim, a governmental entity has no liability for acts or omissions of employees engaged in the performance or

---

[75] *See* Exhibit "C" to Motion, Pg. 144:5-17 and 183:1-10.

execution of police or fire protection duties, unless the employee acted with reckless disregard of the safety and well-being of others not engaged in criminal activity at the time of injury. MISS. CODE ANN. § 11-46-9. Here, the actions of Deputy Dobbins were at all times police functions falling within the confines of this liability exception under the Mississippi Tort Claims Act ("MTCA"). Deputy Dobbins at no time acted with reckless disregard and, therefore, no County Defendant can be held liable for negligence or "reckless disregard for Plaintiff's safety and wellbeing." *See Maldonado v. Kelly*, 768 So. 2d 906, 910 (Miss. 2000).

## V.  CONCLUSION

For the reasons set forth above, Defendants, Humphreys County, Mississippi, Sheriff J.D. Roseman and Deputy Sam Dobbins, respectfully request the Court grant their partial motion for summary judgment and dismiss the claims at issue herein, with all costs related to these claims taxed against the Plaintiff.

THIS, the 6th day of September, 2013.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY:  */s/ Jason T. Marsh*
Gary E. Friedman, MB #5532
Jason T. Marsh, MB #102986
4270 I-55 North
Jackson, Mississippi 39211-6391
Post Office Box 16114
Jackson, Mississippi  39236-6114
Telephone: 601-352-2300
Telecopier: 601-360-9777
Email: friedmag@phelps.com
        jason.marsh@phelps.com

**ATTORNEYS FOR DEFENDANTS
HUMPHREYS COUNTY, MISSISSIPPI,
SHERIFF J.D. ROSEMAN,  AND DEPUTY
SAM DOBBINS**

## <u>CERTIFICATE OF SERVICE</u>

I, JASON T. MARSH, do hereby certify that I have this day filed the foregoing *COUNTY DEFENDANTS' MEMORANDUM IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT* with the clerk of the court using the CM/ECF system which sent notification of such filing to the following counsel of record:

Boyd P. Atkinson
BOYD P. ATKINSON, P.A.
P.O. Box 427
Cleveland MS 38732-0427
(662) 843-9766
atkinsonboydp@bellsouth.net

***ATTORNEY FOR PLAINTIFF***

THIS, 6th day of September, 2013.


/s/ Jason T. Marsh
JASON T. MARSH