Westlaw.

Not Reported in F.Supp.2d, 2011 WL 2516260 (N.D.Miss.)
**(Cite as: 2011 WL 2516260 (N.D.Miss.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Mississippi,
Western Division.
Connie McALLISTER, Plaintiff
v.
DESOTO COUNTY, MISSISSIPPI, and Jason
Coleman and Tarra Davis, in their individual capacities, Defendants.

No. 2:09CV163–SA–DAS.
June 23, 2011.

Jim D. Waide, III, Luther C. Fisher, IV, Waide & Associates, PA, Tupelo, MS, for Plaintiff.

Daniel J. Griffith, Griffith & Griffith, Cleveland, MS, Joseph David Neyman, Jr., Smith, Phillips, Mitchell, Scott & Nowak, Hernando, MS, Gary E. Friedman, Saundra Brown Strong, Phelps Dunbar LLP, Jackson, MS, for Defendants.

**MEMORANDUM OPINION**
SHARION AYCOCK, District Judge.
        **\*1** Defendants have individually filed three motions for summary judgment [63, 65, 68] asserting various forms of immunity from suit. After reviewing the motions, responses, rules and authorities, the Court finds as follows:

*Factual and Procedural Background*
        Jason Coleman, a special investigations agent with the Desoto County Sheriff's Department, and Tarra Davis, a Hernando narcotics officer, were assigned to the Desoto County Metro Narcotics Unit, an integrated unit of narcotics investigators consisting of personnel from the Desoto County Sheriff's Depart-

ment and county-wide law enforcement. Davis was contacted by a confidential informant (CI) who advised she could set up a narcotics transaction with a "Connie Mac." As the CI's drivers' license was suspended, Davis went undercover and drove the CI to the set-up cocaine deals. Coleman assumed the case agent position. Three narcotics transactions were completed, all video and audio recorded. Somewhere in the investigation, the Plaintiff, Connie Jo McAllister was pinned as the drug dealing "Connie Mac."

        On a Thursday evening in September of 2008, the Plaintiff, Connie Jo McAllister, was arrested in Olive Branch, Mississippi, for driving under the influence. She was taken into custody and transported to the Desoto County jail Friday morning after her arrest. When Plaintiff attempted to bond out on her DUI charge, she was informed there was an outstanding warrant against her on the charge of sale of cocaine. She was returned to the general population of the Desoto County jail. On Saturday morning, Plaintiff was served with a warrant and an indictment, which included her birth date and social security number, for one count of sale of cocaine. Plaintiff was not able to bond out of the Desoto County jail until the following Monday.

        In December of 2008, Plaintiff was picked up by the U.S. Marshals on another warrant and second indictment for two more counts of sale of cocaine. McAllister was again transported to the Desoto County jail in Hernando, Mississippi. Plaintiff was housed in a small holding tank due to the fact that the CI that allegedly bought cocaine from Connie McAllister was in the women's unit at the Desoto County jail. Plaintiff maintained her innocence of the charges and informed the guard that she could not identify the informant, and the informant could not identify her.

        The officer decided to let the informant see

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT

2

Not Reported in F.Supp.2d, 2011 WL 2516260 (N.D.Miss.)
**(Cite as: 2011 WL 2516260 (N.D.Miss.))**

Plaintiff. When asked if Plaintiff was the suspect the CI bought cocaine from, the CI said Plaintiff was not the right girl. The case agent in charge of the drug investigation, Jason Coleman, was then called down to the jail, and after speaking with the CI, Plaintiff, and his supervisor, told the officers to "cut her loose."

The actual drug dealer, Connie Faye McAllister, was later arrested, charged, and is serving time for the three incidents of the sale of cocaine to the CI in this case.

Plaintiff contends that Officers Tarra Davis and Jason Coleman wrongfully arrested her without probable cause in violation of the Fourth Amendment and Section 1983. Additionally, Plaintiff asserts that Desoto County is liable for the negligent acts of its officers pursuant to the Mississippi Tort Claims Act.

**\*2** Officers Tarra Davis and Jason Coleman claim they are entitled to qualified immunity as Plaintiff has failed to allege a constitutional violation and failed to establish that they did not act objectively reasonable under the circumstances. Moreover, the individual defendants contend the independent intermediary doctrine protects them from liability as the Desoto County Grand Jury issued the indictments, and there is no evidence that the officers knowingly falsified information to that body. Desoto County argues that it is immune from tort liability under three exceptions of the Mississippi Tort Claims Act. In particular, the County Defendant cites the judicial immunity, law enforcement immunity, and officer discretion provisions of that Act for its protection.

*Summary Judgment Standard*

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("the burden on the moving party may be discharged by 'showing' ... that there is an

absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548. That burden is not discharged by "mere allegations or denials." FED.R.CIV.P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*Discussion and Analysis*
*I. Qualified Immunity*

42 U.S.C. Section 1983 imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights. 42 U.S.C. § 1983. Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the laws of the United States. *White v. Thomas,* 660 F.2d 680, 683 (5th Cir.1981). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2516260 (N.D.Miss.)
(Cite as: 2011 WL 2516260 (N.D.Miss.))

inapplicability of the defense." *McClendon v. City of Columbia,* 305 F.3d 314, 322 (5th Cir.2002) (citing *Bazan ex rel. Bazan v. Hidalgo Cnty.,* 246 F.3d 481, 489 (5th Cir.2001)). This burden cannot be discharged by conclusory allegations and assertions. *Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir.2005).

**\*3** Evaluating a claim of qualified immunity involves two inquiries: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson,* 555 U.S. 223, 129 S.Ct. 808, 172. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Wernecke v. Garcia,* 591 F.3d 386, 392 (5th Cir.2009) (citations omitted). A defendant will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant's actions were lawful; but if officers of reasonable competence could disagree on the issue, immunity should be recognized. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). It is within the discretion of the district court to decide which of the two prongs of the qualified immunity analysis to address first in light of the circumstances of each case. *Pearson,* 555 U.S. 223, 129 S.Ct. at 818.

Plaintiff seeks to recover against Tarra Davis and Jason Coleman for arrest without probable cause pursuant to the Fourth Amendment. "As applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis,* 601 F.3d 393, 401 (5th Cir.2010) (citing *O'Dwyer v. Nelson,* 310 F. App'x 741, 745 (5th Cir.2009); *Devenpeck v. Alford,* 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)).

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *C.H. v. Rankin County Sch. Dist.,* 2011 WL 788908, 2011 U.S.App. LEXIS 4494 (5th Cir. Mar. 4, 2011) (quoting *United States v. McCowan,* 469 F.3d 386, 390 (5th Cir.2006)).

The record in this case establishes that the confidential informant told Tarra Davis that she could purchase narcotics from a "Connie Mac." Davis was present for all three narcotics buys from "Connie Mac," even though she only saw her once and did not get a clear view of her face. In fact, when asked to identify a photograph of Connie Jo McAllister to confirm that they had the correct "Connie Mac," Davis was unable to identify the suspect. The informant wore audio and video recording devices during all three buys. The first video did not show a clear picture of "Connie Mac." Still shots of later videos show "Connie Mac" to be heavy set with short dark hair.[FN1]

> FN1. Connie Jo McAllister is described in the case file as having short blond hair and a small build.

The Defendants clearly had probable cause to arrest "Connie Mac" for selling cocaine on three occasions, as those incidents were set up and monitored by law enforcement themselves.

**\*4** The Supreme Court has noted that "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California,* 401 U.S. 797, 802, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). The Fifth Circuit has followed this rule, stating that "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested, if the arresting officer had a reasonable, good faith belief

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2516260 (N.D.Miss.)
**(Cite as: 2011 WL 2516260 (N.D.Miss.))**

that he was arresting the correct person." *Blackwell v. Barton,* 34 F.3d 298, 303(5th Cir.1994). The question therefore is whether a reasonable officer could believe Connie Jo McAllister was the drug-dealing "Connie Mac." *See Harris v. Payne,* 254 F. App'x 410, 416 (5th Cir.2007) (citing *Blackwell,* 34 F.3d at 304).

At the scene of the drug buys, officers ran tag numbers for all vehicles present. "Connie McAllister" was relayed as the owner of a grey truck at that address. Connie Jo McAllister's information from the "Eagle system" was included in the case file sent to the district attorneys' office by the Metro Narcotics Unit. The Eagle system is a database used by the Desoto County Sheriff's Department to inventory information and photographs of persons who have been arrested or jailed in that county. Because Connie Jo McAllister had prior arrests, her information was in the Eagle system of Desoto County. There is no evidence or indication that Connie Faye McAllister's information or photograph was in the Eagle system at the time the investigation commenced. Lieutenant Jeremy Degan testified that it was not uncommon for people who sell drugs to have have prior arrests. Thus, there was no reason to "disbelieve at the time that the [Connie McAllister] in the Eagle System was not the ["Connie Mac"] that we bought from."

There are several disputed facts regarding how the Plaintiff Connie Jo McAllister's name, photograph, birthdate, and social security number came to be associated as the drug dealing "Connie Mac" Defendants suspected. Coleman asserts the CI told Davis that "Connie Mac's" real name was Connie McAllister. Coleman also testified that Davis had Connie Jo McAllister's information in the file when she handed over the case agent position to him prior to the first drug buy. Davis contends she never did any investigation into who "Connie Mac" was. The CI claims that she did not know "Connie Mac's" real name until the first drug buy.

The Court acknowledges that there is also a dis-

pute regarding whether the CI was shown a photo lineup prior to the drug buys. The informant contends she was shown a lineup with the actual drug dealing Connie McAllister before the first buy. Davis does not remember being present for a photo lineup with the CI during the investigation, and Coleman contends the only lineup the CI was shown was after Connie Jo McAllister's second arrest. However, these disputed issues are not "material" to the qualified immunity analysis. *See Reyes v. City of Richmond,* 287 F.3d 346, 351 (5th Cir.2002) (finding that whether issues of fact are material is a question of law). Even if the Court assumed for purposes of this motion that there was a photo lineup, the CI picked out the real "Connie Mac," and Defendants were present for that event, Plaintiff has still failed to allege or present evidence of any malice or intentional wrong-doing on the part of Davis or Coleman. *Sanchez v. Swyden,* 139 F.3d 464, 469 (5th Cir.1998) (proof that an official's actions went beyond mere negligence necessary before that tort takes on a constitutional dimension).

**\*5** Plaintiff has presented no evidence that either Tarra Davis or Jason Coleman's actions in investigating or suspecting her as a possible drug dealer were malicious or that either individual's actions amounted to more than mere negligence. Indeed, Plaintiff testified:

Q: ... do you know of any reason or do you have any facts or evidence to show that it was intentional that you were the wrong Connie—you, the wrong Connie McAllister was arrested on these charges?

A: No.

Q: So would you agree with me that this was a mistaken identity case?

A: Yes.

The Fifth Circuit has ruled that an officer is enti-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2516260 (N.D.Miss.)
**(Cite as: 2011 WL 2516260 (N.D.Miss.))**

tled to qualified immunity, even if in hindsight he could have taken other reasonable actions to determine a suspect's identity. The tag at the scene of the drug buys came back as belonging to a "Connie McAllister." None of the officers deposed had ever encountered an individual with the same name as the suspect. As noted by Degan, it was not uncommon for a narcotics dealer to have a prior arrest record; thus, Defendants reasonably believed Connie McAllister's information would appear in the Eagle System. Moreover, there is no evidence of bad faith or knowledge on either Defendants' part that Connie Jo McAllister was not the Connie McAllister they were looking for. Therefore, Davis and Coleman were reasonable in believing in good faith that Connie Jo McAllister was the correct "Connie Mac" that was dealing cocaine in Desoto County, Mississippi. *See Byers v. City of Eunice,* 157 F. App' x 680, 684 (5th Cir.2005) (officers not objectively unreasonable in relying on the results of their investigation).

Moreover, once "facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party," even if the officer acted with malice in procuring the warrant or indictment. *Fitch v. Morrow,* 199 F. App'x 347, 350 (5th Cir.2006) (quoting *Taylor v. Gregg,* 36 F.3d 453, 456 (5th Cir.1994); *Hand v. Gary,* 838 F.2d 1420, 1427 (5th Cir.1988)).

Here, Coleman, as the case agent, was responsible for preparing a case file to go to the District Attorney's Office. A supervisor reviewed the case file to make sure all relevant documents were included. The District Attorney then took that information and presented it to the grand jury. The Grand Jury returned an indictment on Connie Jo McAllister.

Plaintiff has not "affirmatively show[n] that the deliberations of that intermediary were in some way tainted by the actions of the defendant[s]." *Shields v.*

*Twiss,* 389 F.3d 142, 150 (5th Cir.2004); *Cuadra v. Houston Indep. Sch. Dist.,* 626 F.3d 808, 813 (5th Cir.2010); *Jennings v. Patton,* ——F.3d ——, 2011 WL 2420086, *3 (5th Cir. June 17, 2011).* At most, Plaintiff has alleged that Defendants were negligent in their criminal investigation.

In light of the "breaks the causal chain" doctrine, Plaintiff cannot demonstrate that Davis and Coleman's actions proximately caused the damages she suffered. *See Murray v. Earle,* 405 F.3d 278, 285 (5th Cir.2005). Therefore, both officers are insulated from liability and protected by qualified immunity. *See Fitch v. Morrow,* 2005 WL 1828592 (S.D.Tex.2005) (qualified immunity protects officer who, without further investigation, and based solely on a computer generated search of names in a database of over three million residents, determined that the plaintiff was the true target of his investigation).

*II. County Defendant*
**\*6** The County Defendant contends it is exempt from liability under the Mississippi Tort Claims Act. In particular, Defendant cites the Judicial Immunity, Law Enforcement Immunity, and Officer Discretion Immunity found in Mississippi Code Section 11–46–9. Because the County Defendant is immune under the discretionary function doctrine, no further analysis is necessary.

The MTCA provides the exclusive remedy against a governmental entity or its employee for the act or omission which gave rise to the suit. Miss.Code Ann. § 11–46–7(1). The intent of the MTCA is to provide immunity from suit to the state and its political subdivisions; however, the MTCA waives immunity for claims for money damages arising out of the torts of government entities and employees while acting within the course and scope of their employment to the extent set forth in the MTCA. Miss.Code Ann. §§ 11–46–3(1), 11–46–5(1). This waiver of immunity is subject to exemptions. Miss.Code Ann. § 11–46–9.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2516260 (N.D.Miss.)
**(Cite as: 2011 WL 2516260 (N.D.Miss.))**

Section 11–46–9(1)(d) states:

A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

There is no dispute that Officers Coleman and Davis were acting within the course and scope of their official duties. "A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof." *Stewart ex rel. Womack v. City of Jackson,* 804 So.2d 1041, 1048 (Miss.2002) (citations omitted). On the other hand, "an act is ministerial '(if the duty is one which has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion.' " *Id.* (quoting *L.W. v. McComb Separate Mun. Sch. Dist.,* 754 So.2d 1136, 1141 (Miss.1999)).

The Mississippi Court of Appeals has recognized specifically that "basic investigative decisions, including the decision of what type of investigation to conduct prior to the execution of the warrant ..." arise from the performance of discretionary functions and involve "profoundly difficult policy or judgment considerations." *Estate of Carr v. City of Ruleville,* 5 So.3d 455, 458 (Miss.Ct.App.2008).

Plaintiff's allegations against Desoto County center around her claim that Coleman failed to investigate the case properly. No statute or mandatory procedures to be followed have been cited or provided to the Court for the instigation of an investigation. Coleman's supervisor Lieutenant Jeremy Degan testi-

fied while he reviewed Coleman's case file and surveillance, the case agent made all decisions as to how to investigate a case. The record reveals that officers were given broad discretion with regards to the investigation of this case. Therefore, the officers were performing a discretionary function, and Desoto County can not face liability for their discretionary acts by virtue of Mississippi Code Section 11–46–9(1)(d).

### Conclusion

**\*7** Officers Coleman and Davis are entitled to qualified immunity as Plaintiff failed to show a constitutional violation, that Defendants acted unreasonably, or that the "breaks the causal chain" doctrine should not apply. Desoto County is immune from suit pursuant to the Mississippi Tort Claims Act.

Defendants' Motions for Summary Judgment [63, 65, 68] are GRANTED, and this case is DISMISSED.

SO ORDERED.

N.D.Miss.,2011.
McAllister v. Desoto County, Miss.
Not Reported in F.Supp.2d, 2011 WL 2516260 (N.D.Miss.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.